1  Anna Maria Martin (Bar No. 7079)
   amartin@mmhllp.com
2  MESERVE, MUMPER & HUGHES LLP
   2500 Sharon Way
3  Reno, Nevada 89509

4  1000 Wilshire Boulevard, Suite 1860
   Los Angeles, California 90017-2457
5  Telephone: (213) 620-0300
   Facsimile: (213) 625-1930
6
   Julian W. Park (Bar No. (*Pro hac vice* forthcoming))
7  KOBRE & KIM LLP
   150 California Street, 19th Floor
8  San Francisco, CA 94111
   Telephone: (415) 582-4800
9  Facsimile: (415) 582-4811

10 Adriana Riviere-Badell (Bar No. (*Pro hac vice* forthcoming))
   KOBRE & KIM LLP
11 201 South Biscayne Boulevard, Ste. 1900
   Miami, FL 33131
12 Telephone: (305) 967-6100
   Facsimile: (305) 967-6120

13

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA - LAS VEGAS

| | |
|---|---|
| CLARK COUNTY ) | Case No. |
| ) | |
| Plaintiff, ) | **EXPRESS SCRIPTS, INC. AND** |
| ) | **EXPRESS SCRIPTS HOLDING** |
| vs. ) | **COMPANY'S NOTICE OF REMOVAL** |
| ) | |
| PURDUE PHARMA, L.P., et al.,, ) | |
| ) | |
| Defendant. ) | |

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

1

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

# NOTICE OF REMOVAL

Defendants Express Scripts, Inc. ("ESI") and Express Scripts Holding Company ("ESHC") (together, "Express Scripts"), by their undersigned attorneys, and pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, 1446, and 1453, give notice of removal of the above-captioned matter, A-17-765828-C, Dept. 16, from the Eighth Judicial District Court for Clark County, Nevada, to the United States District Court for the District of Nevada.[1]

## I. PRELIMINARY STATEMENT

1. This action is one of thousands of lawsuits filed against manufacturers, distributors, and retailers of prescription opioid medications by state and local governments seeking to recoup costs incurred in addressing issues related to the "opioid epidemic." The plaintiffs in these cases generally allege that manufacturers, distributors, and pharmacies created a fraudulent scheme to grow the prescription opioid market by misleading doctors and the public about the addictive nature of opioids. In some cases, the plaintiffs also claim that pharmacy benefit managers, through their formulary design and management, ensured that opioids were regularly prescribed and flooded the market.

2. On December 5, 2017, the Judicial Panel on Multidistrict Litigation created the Opiate Multidistrict Litigation for cases, like this one, in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." In re Nat'l Prescription Opiate Litig., 1:17-md-02804 (N.D. Ohio) (Polster, J.) ("Opiate MDL"), Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (attached as Exhibit 1). To date, more than 1,900 actions have been transferred to the Opiate MDL, most of which originated in state court.

///
///

---

[1] Express Scripts file this notice without waiver of any argument that this Court lacks personal jurisdiction over any parties.

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

171360.1

2

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

## II. BACKGROUND

3. On December 7, 2017, Plaintiff Clark County filed its Complaint in the District Court for Clark County. On September 12, 2019, Plaintiff filed a Third Amended Complaint naming ESI and ESHC as parties for the first time. Plaintiff is represented by the District Attorney for Clark County and a private Las Vegas law firm, Eglet Adams.

4. Plaintiff brings suit against Express Scripts, Inc. a Delaware company with its principal place of business in St. Louis, Missouri, and the only pharmacy benefits manager ("PBM") among the defendants. Compl. ¶ 102. Plaintiff also sues Express Scripts Holding Company, a holding company and parent of Express Scripts, Inc. The other Defendants are manufacturers, distributors, pharmacies and associated individuals.

5. Plaintiff asserts counts against Express Scripts for statutory public nuisance, id. ¶¶ 217–41; common law public nuisance, id. ¶¶ 242¬–68; negligent misrepresentation, id. ¶¶ 269–84; unjust enrichment, id. ¶¶ 311–24; and violation of the Nevada Racketeering Act, NRS § 207.350 to 520, based on alleged violations of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and Nevada Controlled Substances Act, NRS §§ 453.005 to 730, id. ¶¶ 325–415.

6. Most of the allegations in the Complaint pertain to the manufacturers, distributors, and pharmacies, with only a handful directed specifically to the role of PBMs. Plaintiff alleges that the manufacturers, distributors and pharmacies "used both direct marketing and unbranded advertising disseminated by purported independent third parties to spread false and deceptive statements about the risks and benefits of long-term opioid use." Id. ¶ 119. Plaintiff further contends that "[d]istributors each have a non-delegable duty to identify and track suspicious orders of controlled substances." Id. ¶ 169. Plaintiff asserts that the distributors and pharmacies "failed to detect suspicious orders of prescription opioids which Defendants knew or should have known were likely to be delivered and/or diverted into Clark County." Id. ¶ 179.

7. Plaintiff alleges that PBMs provided "benefit plan design, formulary placement, and drug utilization management that would result in more opioids entering the marketplace." Id. ¶ 196. Although Plaintiff alleges that "PBMs distribute opioids directly through their mail order

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

171360.1

3

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

pharmacies," id. ¶ 102, it does not go beyond this conclusory allegation and defines PBMs separately from pharmacies, id. ¶ 99. Plaintiff also does not allege (nor could it) that PBMs manufacture or market prescription opioids.

8. Based on the allegations in its Complaint, Plaintiff claims a litany of injuries to itself and its residents stemming from the alleged abuse of addictive opioids by residents of Clark County, and seeks as damages, among other things, costs for "health services, law enforcement expenditures, costs related to opioid addiction treatment and overdose prevention," id. ¶ 234, as well as "reimbursement for all prescription costs incurred by consumers," id. ¶ 33c.

9. As explained below, removal of this case is proper on four independent grounds: federal officer removal, diversity jurisdiction, federal question jurisdiction, and the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1331(d) and 1453(b).

### III. THE CASE IS REMOVABLE UNDER FEDERAL OFFICER REMOVAL

10. Any person "acting under" a federal officer who is sued "for or relating to any act under color of such office," may remove to federal court. 28 U.S.C. § 1442(a)(1). The statute is to be "liberally construed." Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 147 (2007). Under the "clear command from both Congress and the Supreme Court," "when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006).

11. A party seeking "federal officer" removal must demonstrate that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Durham, 445 F.3d at 1251. The Opiate MDL has accepted that federal officer removal is proper in two cases alleging that the removing defendant distributed opioids pursuant to a contract with the government. Opiate MDL, 327 F. Supp. 3d 1064 (N.D. Ohio 2018), Dkt. No. 934. Express Scripts similarly satisfies the statute.

12. First, Express Scripts was acting under a federal officer. Private entities are "acting under" a federal officer when involved in "an effort to assist or to help carry out, the duties or tasks

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

171360.1

4

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

of the federal superior." Watson, 551 U.S. at 152-53. See also Bennett v. MIS Corp., 607 F.3d 1076, 1088 (6th Cir. 2010) (party acting under federal official where, were there not a contract with the company, the government "itself would have had to perform" the task).

13. Express Scripts holds a contract with the Department of Defense (DOD) to provide PBM services to members of the DOD health care program, Tricare. Statement of Work (SOW) at *1.[2] Express Scripts performs claims adjudication, administers a retail pharmacy network, provides clinical services for specialty pharmaceuticals, processes reimbursements, and provides beneficiary and pharmacy support services under the detailed requirements of the contract and 51-page SOW. Id. at *1–*2. Express Scripts acts as a "fiscal intermediary on behalf of DoD" — through it "The Government will be acquiring covered drugs with Government funds for use by the Government." Id. at *2.

14. Express Scripts thus assists the government with functions DOD would otherwise need to perform itself. See Bennett, 607 F.3d at 1088. Express Scripts' role as "fiscal intermediary," among other things, demonstrates it is acting pursuant to a close relationship and official authority. SOW at *2; see Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1247 (9th Cir. 2017) (allowing removal where government had delegated responsibility to defendants to make subrogation claims on Government's behalf). Cf. Riggs v. Hecker, 325 F. Supp. 3d 1110, 1115 (D. Nev. 2018) (remanding claims where FAA delegation did not allow manufacturer to use its own criteria).

15. Second, the defendant must show a "'causal connection' between the charged conduct and asserted official authority." Jefferson Cty. v. Acker, 527 U.S. 423, 431 (1999) (citing Willingham v. Morgan, 395 U.S. 402, 406 (1969)). This "hurdle . . . is quite low," Goncalves, 865 F.3d at 1244, and is satisfied here.

16. The Complaint alleges that individuals, including members of the military returning from Iraq and Afghanistan, were harmed by the alleged mis-marketing by manufacturers and the alleged conspiracy between manufacturers and other defendants, including PBMs. Compl. ¶¶ 153–

---

[2] See DOD Contract and SOW: https://health.mil/Reference-Center/FOIA-Documents/2017/12/12/Express-Scripts-Military-Health-System-Statement-of-Work

56. Plaintiff further alleges that Express Scripts was part of a collusive enterprise to divert opioids. Id. ¶ 332. Based on these broad allegations as to opioids generally, the alleged diversion cannot be separated from the PBM services provided under the DOD contract. SOW at *1–*2. As the Opiate MDL has concluded as to a distributor, there is a sufficiently pled connection between Plaintiff's allegations of mis-marketing and diversion, and Express Scripts' services, to remove on this basis. See Opiate MDL, 327 F. Supp. 3d at 1078, Dkt. No. 934.

17. Third, Express Scripts can raise colorable federal defenses – including the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's 'compliance with the specifications of a federal government contract.'" Getz v. Boeing Co., 654 F.3d 852, 860 (9th Cir. 2008); see also Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988). The Opiate MDL noted this prong is also a "low bar," and held the opioid distributor could raise a plausible defense that it "was aware of no greater danger than the government was already aware of." Opiate MDL, 327 F. Supp. 3d at 1078, Dkt. No. 934. So, too, Express Scripts can raise this defense, in addition to, for example, preemption based on ERISA and related regulations. Federal officer removal is proper.

## IV. THIS CASE IS ALSO REMOVABLE BASED UPON DIVERSITY

18. A defendant may remove a state court action if there is complete diversity of citizenship, the amount of controversy exceeds $75,000, and other statutory requirements are met. 28 U.S.C. §§ 1332(a), 1441(a). These requirements are satisfied here based upon the doctrines of fraudulent misjoinder and severance.

19. Plaintiff is a political subdivision of the State of Nevada, and thus is a Nevada citizen for purposes of diversity jurisdiction. See Moor v. Alameda Cty., 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes." (citation omitted)).

20. In determining citizenship for diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). Defendants ESI and ESHC are

incorporated in Delaware, with their principal place of business in St. Louis, Missouri. Compl. ¶ 102. Express Scripts is therefore diverse from Plaintiff.

### A. The Defendants Other Than Express Scripts Should Be Severed As Fraudulently Joined.

21. Under the doctrine of fraudulent misjoinder, Plaintiff's claims against Express Scripts are misjoined with the claims against the Defendant Manufacturers, Distributors, Pharmacies and Individuals and should be severed, because the handful of allegations against Express Scripts are not sufficiently related to the claims against the other defendants.

22. "In recent years the term 'fraudulent misjoinder' has been coined to explain a standard by which courts may gauge whether severance of improperly joined parties is warranted." Greene v. Wyeth, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004) (citing Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996));[3] see also Anglada v. Bank of Am. Corp., Case No. 3:11-cv-00524-RCJ-WGC, 2011 WL 5196710, at *4 (D. Nev. Oct. 27, 2011) (following Greene and severing plaintiffs under Rule 21); Sutton v. Davol, Inc., 251 F.R.D. 500, 504 (E.D. Cal. 2008); O'Brian v. Ford Motor Co., Case No. CV 18–cv–1411–DMG (PLA), 2018 WL 1089735, at *2 (C.D. Cal. Feb. 27, 2018). But see Hampton v. Insys Therapeutics, Inc., 319 F. Supp. 3d 1204, 1210 (D. Nev. 2018) (rejecting doctrine and collecting cases). Fraudulent misjoinder occurs when claims do not satisfy the conditions for permissive joinder – namely, that the claims against them arise "[1] out of the same transaction, occurrence, or series of transactions or occurrences and [2] any question of law or fact

---

[3] To date, the United States Court of Appeals for the Ninth Circuit has "assume[d], without deciding, that this circuit would accept the doctrines of fraudulent and egregious joinder as applied to plaintiffs." See Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 F. App'x 727, 729 (9th Cir. 2001). Undersigned counsel is mindful of citing unpublished opinions pursuant to Ninth Circuit Rule 36-3, and brings it to this Court's attention for its information.

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

7

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF REMOVAL

common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2);[4] Greene, 344 F. Supp. 2d at 684. This is a conjunctive test — both elements must be met.[5]

23. In other opioid-related cases, federal district courts have relied on fraudulent misjoinder to exercise diversity jurisdiction. For example, in McDowell Cty. v. McKesson Corp., 263 F. Supp. 3d 639 (S.D. W. Va. July 3, 2017), the plaintiff filed suit in state court against diverse distributors of opioid products for allegedly "flood[ing] McDowell County with opioids" and a non-diverse doctor for allegedly prescribing opioids "knowing that the drugs were likely to be abused, diverted or misused." 263 F. Supp. 3d at 642. The court held that the "plaintiff's claims against the [distributors] and the claims against [the doctor]" lacked "common questions of law or fact" and were "separate and distinct," and so did not defeat diversity. Id. at 647. See also City of Huntington v. AmerisourceBergen Drug Corp., No. 3:17-cv-01362, 2017 WL 3317300, at *5 (S.D. W. Va. Aug. 3, 2017) (same).

24. Here, Plaintiff also fails to satisfy the permissive joinder test. First, the claims against Express Scripts do not arise out of the same transaction or occurrence as the claims against the other Defendants. The vast majority of the allegations in the Complaint concern the manufacturers' allegedly deceptive marketing and misrepresentations concerning the risks and benefits of FDA-approved prescription opioid medications. See, e.g., Compl. ¶¶ 157–63. The remaining allegations pertain largely to the distributors' and pharmacies' supposed failure to detect, halt, and report suspicious orders of opioid medications. See, e.g., id. ¶¶ 294–95. By contrast, Plaintiff's allegations against PBM Express Scripts concern their alleged determinations about which medications will be covered by pharmacy benefit plans and control of opioids' placement on formularies. See, e.g., id. ¶¶ 196, 201.

---

[4] The text of Nevada's permissive joinder rule is substantially the same. See NCPR 20 ("Persons may be joined in one action as defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.").

[5] There is also no requirement to show outright fraud, or that there was no possibility that plaintiff would be able to join the diverse and non-diverse claims. Greene, 344 F. Supp. 2d at 685.

25. Conclusory allegations that PBMs received "incentives from Manufacturer Defendants to keep certain drugs on and off formularies," id. ¶ 198, do not satisfy the same transaction or occurrence prong. Nor does the general assertion that "PBMs distribute opioids directly through their mail order pharmacies," id. ¶ 102, especially where Plaintiff makes separate allegations against the defined group "Pharmacies," which does not include Express Scripts, id. ¶ 98. The Complaint does not allege (nor could it) that Express Scripts markets opioids, or that there is any overlap between the purported activities of Express Scripts and the alleged misconduct of the other Defendant groups.[6]

26. Second, the claims against Express Scripts present no common question of law or fact. In addition to the lack of interlocking facts, although Plaintiff asserts many of the causes of action against all Defendants, the legal issues are distinct for a PBM. For example, analyzing legal duty, breach and causality for a reasonably prudent PBM will necessarily be different than for a reasonably prudent manufacturer or distributor. See Driscoll v. Erreguible, 482 P.2d 291, 294 (Nev. 1971) ("Negligence is failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise."). The conduct allegedly constituting deceptive marketing and misrepresentations also necessarily differs. The Complaint contains targeted allegations of deceptive marketing efforts by the Defendant Manufacturers, see Compl. ¶¶ 157-163, with no such allegations pertaining to Express Scripts.

27. And Plaintiff's generalized pleading of claims against "all Defendants" is of no consequence. Courts have severed claims under similar circumstances, where the statutory basis for the claims is the same but the facts underlying those claims are different. See, e.g., Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997) (upholding finding that claims of various plaintiffs against government agency based on administrative delay failed both prongs of joinder test, where there were numerous reasons for causes of delay).

---

[6] As well, the allegations are entirely unrelated to Plaintiff, Clark County. Indeed, Plaintiff does not even allege that Express Scripts provided PBM services to Clark County, or that Plaintiff was a client of Express Scripts. To the contrary, it asserts that Express Scripts managed pharmacy benefits "within," not for, Clark County. Compl. ¶ 103.

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

9

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

28. For these reasons, the claims against Express Scripts and the other Defendants are separate and distinct. The claims against the other Defendants should be severed. See Coughlin, 130 F.3d at 1350 ("If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties . . .."); see Greene, 344 F. Supp. 2d at 685 (severing claim where defendant's "statutory right of removal has been frustrated by Plaintiffs' improper joinder, and the interests of judicial expediency and justice weigh in favor of severance.").

29. The doctrine of fraudulent misjoinder is particularly applicable where, as here, nearly identical claims against Express Scripts are being actively litigated in the federal Opiate MDL. The fundamental purpose of MDL procedure is to "direct judicial resources and the parties' pretrial litigation efforts more efficiently to benefit both plaintiffs and defendants." In re Propecia (Finasteride) Prod. Liab. Litig., No. 12–CV–2049, 2013 WL 3729570, at *8 (E.D.N.Y. May 17, 2013). "If plaintiffs can escape the MDL by joining multiple, unconnected and non-diverse parties in a state court of their choice, they defeat the purposes of the MDL and deny defendants their right to removal." Id. Here, Plaintiff's attempt to deny Express Scripts its "right to removal in this manner undermines both the purposes of permissive joinder and the benefits of consolidation in multi-district litigation." Id. at *14.

**B.  The Court Should Sever Defendants Other Than Express Scripts.**

30. Regardless if the conditions for permissive joinder are met – and they are not – the Court should sever the other Defendants under Rules 20 and 21.[7] "Even if the standard for permissive joinder under Rule 20(a) is satisfied, district courts have the discretion to refuse joinder and sever claims in the interests of avoiding prejudice and delay, ensuring judicial economy, or

---

[7] Severance is also proper under Federal Rule of Civil Procedure 19. *See Sams v. Beech Aircraft Corp.,* 625 F.2d 273, 277 (9th Cir. 1980) ("Rule 21 grants a federal district of appellate court the discretionary power to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19."). The Manufacturer Defendants, Distributor Defendants, Pharmacy Defendants, and Individual Defendants are not indispensable. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Ward v. Apple Inc.,* 791 F.3d 1041, 1048 (9th Cir. 2015) (quoting *Temple v. Synthes Corp.,* 498 U.S. 5, 7 (1990)).

safeguarding principles of fundamental fairness." Seely v. Baca, No. 3:15-cv-00118-MMD-VPC, 2016 WL 829915, at *1 (D. Nev. Mar. 1, 2016); Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").[8]

31. Numerous courts have recognized the benefits of severing non-diverse defendants to allow coordinated proceedings. See, e.g., Wyndham Assocs. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968) (agreeing with severance under Rule 21 to facilitate a transfer of remaining action to another court overseeing related proceedings to advance the administration of justice); Sutton v. Davol, Inc., 251 F.R.D. 500, 505 (E.D. Cal. 2008) ("Plaintiffs' claims against the [non-diverse] Defendants are severed and remanded pursuant to Rule 21 . . . so as to preserve the removing Defendants' right to removal in the remaining multidistrict action and preserve the interests of judicial expediency and justice"); Joseph v. Baxter Int'l, Inc., 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009) ("[P]laintiffs will benefit from the MDL process: they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-à-vis [the diverse manufacturer]."); Sullivan v. Calvert Mem'l Hosp., 117 F. Supp. 3d 702, 707 (D. Md. 2015) ("critical policy reason" to sever non-diverse defendants was to allow claims against diverse manufacturer to be transferred to MDL). Forcing defendants to litigate the same claims "in state courts throughout the country whenever and wherever the claims might be joined . . . would defeat the entire purpose of [an] MDL." Sullivan, 117 F. Supp. 3d at 707.

32. Permitting Plaintiff's claims against Express Scripts to proceed in a streamlined manner through the Opiate MDL far outweighs any potential prejudice to Plaintiff. Meanwhile, forcing Express Scripts to potentially litigate the same claims in various state courts not only prejudices it, but defeats the entire purpose of the federal Opiate MDL. Given that Plaintiff has not yet served Express Scripts in this case, severance and removal will permit expeditious transfer to the federal Opiate MDL. Because the claims against the other Defendants are misjoined, and given the

---

[8] The text of Nevada's misjoinder rule is substantially the same. See N.R.C.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

important policy considerations at play, those claims should be severed and those against Express Scripts should be permitted to proceed in federal court.

### C. The Amount in Controversy Requirement Is Satisfied.

33. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 81 (2014). If damages are unstated or understated, defendant must show by a preponderance of the evidence that the amount in controversy is satisfied. Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015).

34. Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly affected Clark County and its residents, with allegations extending as far back as 1999. See Compl. ¶ 3. Plaintiff seeks compensatory and punitive damages. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $75,000.[9]

### V. THIS COURT HAS FEDERAL QUESTION JURISDICTION

35. This Court has and should exercise federal jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1441.

36. A defendant may remove any state-court action that originally could have been filed in federal court, 28 U.S.C. § 1441(a), including cases that raise federal questions or arise under federal law. Generally speaking, federal courts may properly exercise jurisdiction over a case "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citation omitted). But even cases involving only state-law claims may qualify for federal-question jurisdiction "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." City of Chi. v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997); Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13, 27–28 (1983) (explaining that a case arises under

---

[9] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiff is entitled to recover this or any amount.

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

12

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF REMOVAL

federal law when "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

37.  Plaintiff alleges that certain Manufacturer and Distributor Defendants breached their duties to prevent diversion and report suspicious orders under Nevada and Federal law. Compl. ¶¶ 329–31.  Plaintiff further alleges that the Defendants are bound by the requirements of "the Controlled Substances Act, 21 U.S.C. § 821, et seq." ("CSA"), id. ¶ 329, are required to comply with certain federal regulations in order to register with the federal Drug Enforcement Administration ("DEA"), id. ¶¶ 329–31, and have intentionally failed to furnish notifications and reports in violation of the federal statute and regulation, which are incorporated into Nevada law, id. ¶ 408.  Plaintiff alleges that PBMs "establish formularies which govern which drugs are reimbursed and how . . . [and] distribute opioids directly through their mail order pharmacies, and, like other pharmacies, are DEA and state registrants." Id. ¶¶ 99–101.

38.  At the core of Plaintiff's Complaint is that the CSA implemented a nationwide "closed system," and that "central" to the system was the "directive that the DEA determine quotas of each basic class of Schedule 1 and II controlled substances each year." Id. ¶ 339.  Plaintiff alleges Defendants subverted those quotas.  Id. ¶ 348.  Setting aside that the allegations themselves do not relate specifically to PBMs, the prominence of the federal statute and decisions of a federal agency make clear that resolving Plaintiff's claims requires resolution of substantial federal questions.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) ("[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").

39.  Courts have applied a four part test for federal question jurisdiction:  the Court may exercise jurisdiction if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable, 545 U.S. at 314)).  The "substantial" prong, in turn, is influenced by three considerations: "(1) whether federal law underlying the issue provides for a federal cause of action, Grable, 545 U.S. at 318; (2) whether the

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

13

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

issue presents a pure legal question, Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 700 (2006); and (3) whether the issue is important to the federal system as a whole, Gunn, 568 U.S. at 260." City of Reno v. Purdue Pharma, L.P., No. 3:18-cv-00454, 2018 WL 5730158, at *5 (D. Nev. Nov. 2, 2018).

40. In an opioid case filed in this District, this Court found the test lacking. Id. But Plaintiff in that action pled only state law causes of action and did "not cite the source of" the alleged breached duties. Id. at *2. And although it later became clear that the sources were both state regulations and the Controlled Substances Act, id. at *2–*3, the Court concluded that Plaintiff could succeed by showing breach of a general duty, id. at *4.

41. Here, by contrast, Plaintiff cites the federal statute and regulations in the Complaint, and they are the lynchpin of the suit, especially as to the cause of action for racketeering – a cause of action not asserted in City of Reno. A recent decision from the Opiate MDL, decided since City of Reno, confirms the importance of the federal issue. In its August 19, 2019 "Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing The Controlled Substances Act," the Court considered the CSA and DEA's implementing regulations and the duties imposed by them, and then "examine[d] what the Defendants actually did compared to what the law requires." See In Re: National Prescription Opiate Litigation, No. 1:17-md-02804 (N.D. Ohio Aug. 19, 2019), Dkt. No. 2483, at 5. This puts beyond doubt that the federal issue is front and center, and should be determined by the federal courts.

42. As to the test, Plaintiff's state law claims "necessarily raise" a federal question because they are based, in part, on Defendants' alleged noncompliance with federal law and regulations. See Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth., 776 F.3d 463, 466 (7th Cir. 2015). The Complaint also implicates the decisions of a federal agency — namely, the quota determinations of the DEA. See Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700 (2006) ("The dispute [in Grable] centered on the action of a federal agency (IRS) and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases."); Bd. Of Comm'rs of the

LAW OFFICES
**MESERVE,
MUMPER &
HUGHES LLP**

171360.1

14

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF REMOVAL

Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., 29 F. Supp. 3d 808, 862 (E.D. La. 2014) ("While Plaintiff may not be expressly challenging a specific action of a federal agency, the breadth of Plaintiff's claims amounts to a collateral attack on an entire regulatory scheme."). Compliance with these federal laws and regulations is "actually disputed," satisfying the second prong of the test.

43. Third, the federal issue is "substantial." The Supreme Court has explained: "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Grable, 545 U.S. at 312. The CSA notes that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. "Minimizing uncertainty over" reporting obligations under the CSA has satisfied the Grable standard and "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 318 (2d Cir. 2016). Plaintiff's attempt effectively to enforce the CSA raises a substantial federal question, even though the CSA does not provide a private right of action. See Grable, 545 U.S. at 316 (holding lack of a federal cause of action does not foreclose federal question jurisdiction).

44. Fourth, the federal issue is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." Gunn, 568 U.S. at 258. It is the federal courts that ensure consistency and hear challenges to DEA authority to enforce the CSA. As with removal for diversity, removal based on federal question would be particularly appropriate here, where more than 1,900 opioid cases are pending in the MDL in the Northern District of Ohio and, as explained above, that Court has already addressed the CSA and regulatory framework.[10] Removal is thus proper on this ground.

---

[10] To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a).

## VI. THIS ACTION IS REMOVABLE UNDER CAFA

45. This action is also removable under CAFA, 28 U.S.C. §§ 1332(d) and 1453(b), because (i) it raises factual and legal issues of national importance that, consistent with CAFA's primary purpose, should be adjudicated in federal court; (ii) the lawsuit essentially is a class action; and (iii) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. See 28 U.S.C. § 1332(d).

46. The Ninth Circuit has recognized that "Congress intended CAFA to be interpreted expansively." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Even more recently, the Ninth Circuit reiterated the Supreme Court's admonition that "no antiremoval presumption attends cases invoking CAFA." Arias v. Residence Inn by Marriott, No. 2:18-cv-08818, 2019 WL 4148784 (9th Cir. Sept. 3, 2019) (citing Dart, 574 U.S. at 81). This case is appropriately removed under CAFA.

47. First, as one of over 2,000 opioid actions filed across the country, this action raises issues of national importance and is precisely the kind of case that Congress intended to be litigated in federal court. See, e.g., Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013) (vacating remand order because it ran "directly counter to CAFA's primary objective: ensuring 'Federal court consideration of interstate cases of national importance'") (quoting § 2(b)(2), Pub.L. No. 109-2, 119 Stat. 5); see also W. Va. ex rel. McGraw v. Comcast Corp., 705 F. Supp. 2d 441, 448 (E.D. Pa. 2010) (noting that CAFA's language was intended to, and does, "strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.") (quoting S. Rep. No. 109-14, 35, as reprinted in 2005 U.S.C.C.A.N. 3, 34).

48. Indeed, Plaintiff expressly alleges that its claims raise issues of national importance, beginning its Complaint with the assertion that "[o]pioid addiction and overdose in the United States as a result of prescription opioid use has reached epidemic levels over the past decade" and citing reports from the United States Centers for Disease Control and Prevention for the proposition that "175 Americans die every day from an opioid overdose (prescription and heroin)." Compl. ¶¶ 1, 7. Plaintiff also relies for its claims on federal laws and regulations. See, e.g., id. ¶ 348 (alleging that

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

16

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF REMOVAL

certain defendants' causal misconduct violated "State and Federal laws"). This requirement is thus satisfied.

49. Second, this lawsuit is a poorly-disguised class action. Under CAFA, a "class action" is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with CAFA's intended purpose to facilitate and expand class action defendants' access to federal courts, and the lack of a presumption against removal, see Dart, 574 U.S. at 81, "Congress emphasized that 'class action' should be 'interpreted liberally' . . . [and that] 'CAFA's application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff." Williams v. Employers Mut. Cas. Co., 845 F.3d 891, 901 (8th Cir. 2017) (quoting S. Rep. No. 109-14, at 35 (2005) (modifications and brackets omitted)). For purposes of determining CAFA jurisdiction, "lawsuits that resemble a purported class action should be considered a class action." W. Va. ex rel. McGraw, 705 F. Supp. 2d at 452 (quoting S. Rep. No. 109-14, 35).

50. Plaintiff's action is a "class action[s] in all but name." See id. Plaintiff expressly seeks, among its damages, "restitution and reimbursement for all prescription costs incurred by consumers related to opioids." Compl. ¶ 33c, Prayer for Relief ¶ 7. This demand makes clear that Plaintiff is attempting to represent a class and the case should be treated accordingly.

51. Plaintiff's other alleged injuries derive from its residents' injuries, and cannot be separated from those injuries. Plaintiff seeks to recover costs for "health services, law enforcement expenditures, costs related to opioid addiction treatment and overdose prevention." Id. ¶ 234. Any such damages would be a calculation of aggregate damages resulting from individual instances of opioid use and addiction, and thus also based on the putative class.

52. Third, CAFA's jurisdictional requirements are satisfied. CAFA jurisdiction extends to class actions in which the number of members of all proposed plaintiff classes is at least 100. See 28 U.S.C. § 1332(d)(5)(B). The Complaint alleges that opioid-related hospitalizations state-wide were 8,231 in 2015, and that in the same year state-wide in-patient admissions totalled 7,035. Compl.

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

17

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS
SCRIPTS HOLDING COMPANY'S NOTICE OF
REMOVAL

¶ 206. Plaintiff also asserts that the vast majority of hospital visits occurred in Clark County. Id. ¶ 205. Thus, the potential number of people alleged to be affected is clearly over the 100-member numerosity requirement under CAFA.

53. The Complaint also satisfies the minimum diversity requirement. See 28 U.S.C. § 1332(d)(2)(A) (CAFA jurisdiction extends to class actions in which "any member of a class of plaintiffs is a citizen of a State different from any defendant."). Here, the putative (if unalleged) plaintiff class of interested residents is Nevada citizens. And most of the named Defendants are citizens of states other than Nevada. Compl. ¶¶ 35–112 (Parties).

54. Finally, CAFA confers upon this Court original jurisdiction over class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). Here, although not quantified, CAFA's amount-in-controversy requirement is easily met given Plaintiff's claimed entitlement to "substantial" and "significant" costs on behalf of the entire County. See Scott v. Cricket Communications, LLC, 865 F.3d 189, 196 (4th Cir. 2017) ("The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" (quoting McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008))).

55. For these reasons, and because all relevant procedural requirements have been satisfied (see infra Sect. VII), removal is proper under CAFA.

### VII. COMPLIANCE WITH PROCEDURAL REQUIREMENTS

56. Express Scripts has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446.

57. In accordance with 28 U.S.C. § 1441(a), venue is proper in this Court because the United States District Court for the District of Nevada is the federal judicial district embracing the District Court for Clark County where the Plaintiff filed this action.

58. A defendant must file a notice of removal within thirty days after receiving service of process. See 28 U.S.C. § 1446(b); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 356 (1999). Express Scripts has not yet been served, so notice is timely.

59. Removal before service is proper. See, e.g., Lamy v. United Parcel Serv., Inc., No. 2:09-cv-01890, 2010 WL 1257931, at *2 (D. Nev. Mar. 27, 2010) (allowing removal before service).

60. In accordance with Local Rule 3-1, a Civil Cover Sheet is attached as Exhibit 2.

61. In accordance with 28 U.S.C. § 1446(a), a copy of the operative Third Amended Complaint, and all "process, pleadings, and orders" served on the defendants in the state court proceeding is attached as Exhibit 3.

62. In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Express Scripts will "give written notice thereof to all adverse parties." A true and correct copy of the Notice to Plaintiff will be filed as a separate document.

63. In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice, Express Scripts will "file a copy of the notice with the clerk" of the District Court for Clark County.

64. For the purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446(b), all defendants who have been properly joined and served must consent to removal. Here, even if consent is required from some defendants, consent is not required from misjoined defendants. Nor is consent required for federal officer or CAFA removal. For federal question removal, defendants who have been served have consented.[11]

65. Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendants' right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Express Scripts respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

---

[11] The consents will be filed concurrently with this Notice or shortly thereafter.

## VIII. CONCLUSION

WHEREFORE, Express Scripts hereby removes this action from the District Court for Clark County, to the United States District Court for the District of Nevada.

Dated: September 13, 2019

Respectfully submitted,

KOBRE & KIM LLP

MESERVE, MUMPER & HUGHES, LLP

*/s/ Julian W. Park*
Julian W. Park, Esq.
*(Pro hac vice forthcoming)*
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: (415) 582-4800
Fax: (415) 582-4811
Julian.Park@kobrekim.com

Attorney for Defendants
EXPRESS SCRIPTS, INC.
and EXPRESS SCRIPTS HOLDING COMPANY

*/s/  Anna Maria Martin*
Anna Maria Martin

Anna Maria Martin, Esq. (NV Bar No. 7079)
316 California Ave. #216
Reno, Nevada 89509
(213) 576-1415

1000 Wilshire Blvd., Suite 1860
Los Angeles, CA  90017
Tel.: (213)-576-1415
Fax: (213) 625-1930
amartin@mmhllp.com

Attorney for Defendants
EXPRESS SCRIPTS, INC.
and EXPRESS SCRIPTS HOLDING COMPANY

KOBRE & KIM LLP

*/s/ Adriana Riviere-Badell*
Adriana Riviere-Badell, Esq.
*(Pro hac vice forthcoming)*
201 South Biscayne Boulevard. Ste 1900
Miami, FL 33131
Tel.: (305) 967-6100
Fax: (305) 967-6120
Adriana.Riviere-Badell@kobrekim.com

Attorney for Defendants
EXPRESS SCRIPTS, INC.
and EXPRESS SCRIPTS HOLDING COMPANY

LAW OFFICES
MESERVE,
MUMPER &
HUGHES LLP

171360.1

20

Case No.
EXPRESS SCRIPTS, INC. AND EXPRESS SCRIPTS HOLDING COMPANY'S NOTICE OF REMOVAL